## MARCH TERM, 1798.

PRESENT—M'KEAN CHIEF JUSTICE, SHIPPEN, YEATES AND SMITH, JUSTICES.

JOHN IRWIN *against* CASPER SINGER, JOHN SINGER and ABRAHAM SINGER.

One agreeing with another to take up lands, whereof the legal title is to remain in himself with power of selling to others, but to account to his partner for a certain proportion of the sales, and conveying the same to a creditor without notice, for a preexisting debt, who sells the same, the original partner has a lien on his proportion of the sales.

CASE stated. On the 18th October 1783, articles of agreement were entered into between William Simple and David Tait, whereby the former agreed to furnish 50,000 acres in land warrants of the state of Virginia, the latter agreed to explore the country, and attend the deputy surveyors in laying the warrants and making the surveys, at the cost of the former. It was further agreed, that Simple should take out the patents in his own name, and make over one fourth part thereof to Tait, but no division was to be made of the lands. Power was reserved to Simple to dispose of the lands, and he was to account with Tait for one fourth part of the moneys arising on the sales.

The warrants mentioned in the articles were the property of Simple, and in pursuance thereof 37,999¼ acres were surveyed, and the titles thereto were legally vested in him, by patents from the commonwealth of Virginia.

On the 12th December 1786, Simple being largely indebted to the defendants, in consideration thereof and of 5s. sold and conveyed to them in fee simple, the said 37,999¼ acres of land.

On the 4th October 1787, Simple being indebted to Emanuel Walker and Co. in more than $1200, in consideration thereof, executed an assignment to them of the surplus money arising on the sales of the lands, after satisfying the defendant's demand.

In September 1792, Simple became a bankrupt.

On the 5th March 1794, defendants had notice of the articles of agreement of the 18th October 1783, and after taking the advice of counsel, exposed to sale the whole of the said 37,999¼ acres, conveyed to them by the deed of 12th December 1786; when no better bidders offering, they bought the same at 5 cents per acre, and next day sold the same to Robert Morris, Esq., at 6 cents per acre, at which last rate they charge themselves.

On the 10th January 1795, Simple wrote a letter to the defendants, informing them that Irwin the plaintiff, was vested with the interest of Tait in the premises. This fact is admit-

ted to be true; but it is also admitted, that the defendants had no knowledge thereof, until after the sale was made.

The whole amount of sales is far short of the amount of the debt due from Simple to the defendants, and Walker and company; and it is not ascertained, that it will be sufficient to satisfy the debt due to the defendants.

The question submitted to the opinion of the court is, whether the plaintiff is entitled to demand and recover from the defendants the one fourth part of the amount of sales or not? If their opinion shall be in favor of the defendants, then judgment shall be entered for them; but if otherwise, the amount unless agreed on, shall be settled by reference or verdict, and judgment entered accordingly.'

Messrs. Lewis and Hallowel contended, for the defendants, that the plaintiff had no lien on the lands. He became substituted in the place of Tait, who relied on the personal covenant of Simple. The defendants are not stakeholders, but claim the whole lands under an absolute conveyance, in consideration of a pre-existing debt. The legal title of the land warrants was in Simple, and so of the patents. The defendants relied thereon and have been lulled into security by not receiving earlier notice of Tait's or Irwin's claim. The plaintiff ought therefore to be postponed.

Mr. Rawle, è contra insisted, that the defendants were not placed in a more advantageous situation by Simple, than he had previously been in himself. The transfer of the lands to them was made for the express purpose of securing their demand, and could only operate as to the interest the debtor had therein. This clearly appears to be the idea of the contracting parties; and in pursuance of this opinion, Simple conceiving himself to have an ultimate right to the surplus, after the defendant's debt was paid, conveys this surplus to Walker and Co. The deed though absolute on the face of it, must be considered in reference to the objects intended to be reached thereby. It was originally stipulated by the articles, that there should be no division of the lands, of which surveys should be made. Simple had the mere power of disposing of the whole concern for the mutual benefit of the parties interested, but was entitled only to three fourths of the proceeds. Perhaps if his deed had been made to a *bona fide* purchaser for a money consideration, without notice of the equitable interest of Tait or his assigns, the lien might not continue, inasmuch as the money might be parted with, in consequence of, and reliance on, the legal title. But

here the debt due from Simple to the defendants was not contracted in contemplation of these lands; and the case is thus materially varied.

The court said, that the plaintiff was entitled to one fourth part of the proceeds of the lands as well on principle as precedent, and directed.

                                        Judgment for the plaintiff.

---

ALEXANDER DURDON executor of ANNE DURDON late ANNE PENN, who was executrix of SPRINGET PENN, who was executor of WILLIAM PENN (the third ) *against* CHRISTIANA GULIELMA GASKILL.

A legacy or trust is not within the statute of limitations; but after a length of time payment will be presumed; yet such presumption may be rebutted by other circumstances. *Indebitatus assumpsit* will not lie for a legacy against an executor. Aliter against a devisee who receives money belonging to another legatee.

*Indebitatus assumpsit* for 820*l*. 10*s*. 10½*d*. received by the defendant, for the use of William Penn (the third) in his life time. Pleas *non assumpsit* and payment, and *non assumpsit infra sex annos*.

Replication to the second plea, *non solvit* and issues. Also, to the last plea, that the sum demanded was a legacy, and the money received in trust and fraudulently concealed from the plaintiff, and those whom he claims.

Rejoinder, that the defendant did not prove the will of the said William Penn, (the third) as his executrix, nor receive the legacy in trust, nor fraudulently conceal the same.

Surrejoinder and issues.

This cause came on to trial at the last December term, when the following facts appeared in evidence.

Letitia Aubrey, daughter of William Penn (the first) became entitled to 5000 acres of land in Chester county, called Sir John Fag's manor, by patent, bearing date 16th May 1737; and on the 3d April 1740, she executed a letter of attorney to James Logan and William Logan, to sell and make conveyances of all her lands in Pennsylvania and the lower counties in Delaware.

Letitia Aubrey by her will duly proved, bearing date the 20th July 1744, devised her lands to her nephew William Penn, (the third) son of William Penn (the second) during life, remainder to the defendant her daughter in fee; and all her personal estate